**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| In re: | ) | **MDL NO.** |
| | ) | |
| **CAPITAL ONE CONSUMER DATA** | ) | |
| **SECURITY BREACH LITIGATION** | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO
THE WESTERN DISTRICT OF WASHINGTON AND FOR CONSOLIDATION
PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and JPML Rule 6.2, Michael Fadullon, Plaintiff in the case

styled *Fadullon v. Capital One Financial Corporation, et al.*, U.S. District Court for the Western

District of Washington, Case No. 2:19-cv-01189, submits this brief in support of his Motion to

Transfer and Consolidate for Coordinated Pretrial Proceedings under 28 U.S.C. § 1407 to the

Western District of Washington.

**I.   INTRODUCTION**

This motion for transfer seeks to transfer five actions pending in four different federal

Districts asserting common factual allegation and involving overlapping claims, classes, and

legal issues ("Actions") along with future tag-alongs, to the Western District of Washington, and

consolidate them for pre-trial purposes. *See* Ex. A, Schedule of Actions. All of the Actions are

premised on a data breach, first publicly disclosed on July 29, 2019, in which (according to

Capital One's press release) over 100 million individuals' sensitive personal and financial

information was compromised in a hack allegedly committed by Defendant Paige A. Thompson,

an individual residing and arrested for this crime in Seattle, Washington (the "Data Breach").

The criminal case against Ms. Thompson—*USA v. Thompson*, Case No. 2:19-mj-00344-MAT

(W.D. Wash., July 29, 2019)—is pending in the Western District of Washington (before

Magistrate Judge Mary Alice Theiler) and will disclose the seminal facts surrounding the Data

Breach during its proceedings. These facts will determine the liability of all the defendants in the civil actions.

According to the press release: "The largest category of information accessed was information on consumers and small businesses as of the time they applied for one of our credit card products from 2005 through early 2019." *Capital One News Release* (July 29, 2019), phx.corporate-ir.net/phoenix.zhtml?c=70667&p=irol-newsArticle_Print&ID=2405042 (last visited July 30, 2019).

Capital One admits that a wide variety of information was compromised, including at least 140,000 Social Security numbers, 80,000 bank account numbers, and all the information "Capital One routinely collects at the time it receives credit card applications, including names, addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, and self-reported income" ("Personal Information"). *Id*.

Based on the extensive press coverage of the Data Breach, Plaintiff expects additional actions to be filed in the federal courts alleging similar claims, on behalf of similar classes.

**A.      Plaintiffs**

All plaintiffs in the pending Actions have filed civil class actions arising from Capital One's recent disclosure of the Data Breach affecting plaintiffs' Personal Information, which Capital One maintained on cloud-based systems, maintained by Amazon Web Services ("AWS"), along with the Personal Information of 100 million other applicants for Capital One cards from 2005 through early 2019. The Actions are pursued on behalf of all persons whose Personal Information was compromised in the Data Breach.

Each of these pending Actions presents a common core of facts, in that each (i) alleges that plaintiffs' Personal Information was disclosed during the Data Breach; (ii) asserts injury and damages arising from Defendants' wrongful conduct; and (iii) alleges the same or similar

conduct by Defendants. Indeed, the factual allegations in plaintiffs' complaints are nearly identical in numerous critical respects.

**B.      Defendants**

Defendant Capital One is a Delaware corporation with its principal place of business in McLean, Virginia, in the Eastern District of Virginia. Defendant AWS is a Delaware corporation with its principal place of business in Seattle, Washington. Defendant Paige A. Thompson is an individual currently incarcerated in the Seattle, Washington, area.

**C.      Status of the Actions**

Plaintiffs filed the pending Actions in Washington, Virginia, California, and the District of Columbia, on the same day—July 30, 2019—one day following Capital One's announcement concerning the Data Breach. Given the infancy of these cases, none of the plaintiffs have conducted discovery, and none of the Actions have proceeded towards trial such that transfer would be unduly prejudicial or inefficient. These Actions are in the earliest procedural stage—no defendant has answered or otherwise appeared—and, accordingly, it is a convenient time to coordinate the Actions.

## II.  LAW AND DISCUSSION

**A.      The Panel Should Centralize This Litigation Under § 1407.**

The Panel may transfer civil actions to a single district court for coordinated pretrial proceedings upon a determination that (1) the cases involve one or more common questions of fact; and (2) the transfer will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). These factors support centralizing the instant litigation because the plaintiffs in all of the pending Actions seek to

represent classes of the same individuals based on the same incident. This Panel commonly holds

that centralization is appropriate in data-privacy class actions.[1]

### 1.      All of the Cases Involve Common Questions of Fact.

First, the pending Actions involve common questions of fact. Transfer under Section

1407 "does not require a complete identity or even a majority of common factual or legal issues

as a prerequisite to transfer." *In re Rembrandt Technologies, LP, Patent Litig.*, 493 F. Supp. 2d

1367, 1370 (J.P.M.L. 2007). Here, the claims in the five (5) pending Actions all share at least

one common defendant, Capital One, or one or more of its affiliates. All arise out of the same

alleged data security incident concerning a database operated by Capital One which was housed

on a cloud server maintained by Amazon Web Services, Inc. ("AWS"). In every case, the

plaintiffs' claims turn on whether Defendant Capital One is legally culpable for the alleged

---

[1] *See In Re: Marriott Int'l Inc., Data Sec. Breach Litig.,* 363 F. Supp. 3d 1372 (Feb. 6, 2019);*In Re: Uber Technologies, Inc., Data Sec. Breach Litig.,* 304 F. Supp. 3d 1351 (Apr. 4, 2018); *In Re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322 (J.P.M.L. Dec. 6, 2017); *In Re: Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382 (J.P.M.L. Dec. 6, 2017); *In Re 21st Century Oncology Customer Data Sec. Breach Litig.,* 214 F. Supp. 3d 1357 (J.P.M.L. Oct. 6, 2016)*; In re: Sprouts Farmers Market, Inc., Employee Data Sec. Breach Litig.*, 232 F.Supp.3d 1348 (J.P.M.L. Oct. 6, 2016)*.In re Cmty. Health Sys., Inc., Customer Sec. Data Breach Litig.*, 84 F. Supp. 3d 1362, 2015 WL 500900, at *1 (J.P.M.L. Feb. 4, 2015); *In Re: Ashley Madison Customer Data Se. Breach Litig.*, 148 F. Supp. 3d 1378 (J.P.M.L. Dec. 9, 2015); *In re Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338, 1339 (J.P.M.L. 2014); *In re: Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 867 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012); *In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1382 (J.P.M.L. 2013); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 870 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 802 F. Supp. 2d 1370, 1371 (J.P.M.L. 2011); *In re RBS Worldpay, Inc., Customer Data Sec. Breach Litig.*, 626 F. Supp. 2d 1322, 1323 (J.P.M.L. 2009); *In re: Heartland Payment Sys., Inc.*, 626 F. Supp. 2d 1336, 1337 (J.P.M.L. 2009); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F. Supp. 2d 1405, 1406 (J.P.M.L. 2008); *In re: Lending Tree, LLC, Customer Data Sec. Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008); *In re: Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 588 F. Supp. 2d 1368, 1369 (J.P.M.L. 2008); *In re TJX Cos., Inc., Customer Data Sec. Breach Litig.*, 493 F. Supp. 2d 1382, 1383 (J.P.M.L. 2007); *In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, 461 F. Supp. 2d 1367, 1369 (J.P.M.L. 2006).

incident, thereby making significant factual issues common among the pending actions. *See, e.g., In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 870 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012) (finding transfer appropriate where the "actions all arise out of the September 2011 theft of computer tapes containing personally identifiable and protected health information"); *In re: RBS Worldpay, Inc., Customer Data Sec. Breach Litig.*, 626 F. Supp. 2d 1322, 1322 (J.P.M.L. 2009) (centralizing where "[b]oth actions involve allegations stemming from an unauthorized intrusion into RBSW's computer system").

**2.     Centralization of the Cases Promotes Their Just and Efficient Litigation.**

Second, centralization will promote the just and efficient litigation of the Actions. Consolidation of pretrial proceedings eliminates the likelihood of inconsistent rulings regarding the overlapping claims and other key threshold legal issues present in data-privacy litigation regardless of what claims are raised. Although the precise causes of action raised in each of the pending Actions are not identical, the primary causes of action are common throughout the cases as a whole as they all seek to hold Defendants liable for the alleged data incident—primarily through claims of negligence and breach of contract, as well as violations of various state consumer protection statutes. But "the presence of additional facts or differing legal theories is not significant where, as here, the actions still arise from a common factual core." *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014).

Moreover, plaintiffs seek certification of the same or similar class of plaintiffs in each case. This Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975); *see also In re Natrol, Inc. Glucosamine/Chondroitin Marketing and Sales Practice Litig.*, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014) (noting that centralization of three overlapping putative class actions was

appropriate to "prevent inconsistent pretrial rulings[,] in particular with respect to class certification and discovery issues").

Finally, given that the alleged data incident affected over 100 million consumers who provided their Personal Information when they applied for a Capital One credit card, even more tag-along actions are likely to be filed. *See, e.g., In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (granting § 1407 motion where the estimated number of affected customers across five states indicated that additional tag-along actions could also be filed).

### 3.    Centralization Creates Convenience for the Parties and Witnesses.

Third, centralization will create convenience for the parties and witnesses and conserve judicial resources. Centralization is appropriate where it "will eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014); *see also Manual for Complex Litigation, Fourth* § 20.131 (2004) (Requests for Transfer) ("The objective of transfer [through the MDL process] is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."). If the litigation is not centralized, Defendants will be subject to duplicative discovery demands and be forced to litigate the same issues before several courts, driving up litigation costs, putting them at risk of inconsistent rulings, and wasting judicial resources in the process.

### B.    The Western District of Washington Is the Ideal Transferee Forum.

In selecting the transferee court, the Panel considers several factors, including "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will

be minimized, and the experience, skill, and caseloads of available judges." *Manual For*

*Complex Litigation, Fourth* § 20.131 (2004).

> **1.      Western District of Washington is the Site of the Occurrence of Most Common Facts and Maximizes the Convenience of the Parties and Witnesses.**

Defendant Thompson perpetrated the hack that resulted in the Data Breach in Seattle and

is held in federal custody there. The criminal proceedings against her will reveal the seminal

facts of the Data Breach underpinning all of Defendants' liability. She is a key witness to the

other Defendants' negligent cybersecurity practices that allowed the hack to occur, as well as the

type of consumer information that was compromised and how it was compromised. The

incriminating evidence seized by the authorities is held in Seattle, and will be the subject of

discovery in the civil actions. This witness – who will have to be deposed while in federal

custody in the Western District of Washington – and her evidence are also the key to the

injunctive relief sought by the civil plaintiffs to retrieve and contain the sensitive personal and

financial consumer information so as to preclude further harm.

Furthermore, Defendant AWS has substantial ties to the Western District of Washington.

AWS is headquartered in the Western District of Washington. *See Yahoo! Inc. Customer Data*

*Sec. Breach Litig.*, 223 F. Supp. 3d 1353 (J.P.M.L. 2016) (selecting Northern District of

California as the appropriate transferee district because defendant's corporate headquarters were

located there "and therefore relevant documents and witnesses are likely to be located there."). In

fact, AWS is already a defendant in many actions pending in the Western District of

Washington. AWS's servers and systems, located in the Western District of Washington, will be

the subject of discovery in the related civil actions. So will its cybersecurity policies and

procedures, and its dealings with Capital One, all emanating from the Western District of

Washington.

Defendant Capital One is "one of the financial industry's most vocal proponents for shifting sensitive customer information to outside cloud services," and conspicuously endorsed AWS.

> Over the years, Capital One has become something of a poster child for Amazon's push into financial services for its cloud business. The lender was among the first to publicly acknowledge a partnership with Amazon, and it was the subject of several case studies that Amazon published on how its technology can improve banks' offerings. "Capital One selected AWS for its security model," according to an Amazon Web Services website. "It is using or experimenting with nearly every AWS service to develop, test, build and run its most critical workloads, including its new flagship mobile-banking application."

By virtue of its close working relationship with ASW and the glaring security failure that occurred in Seattle, Capital One's conduct for purposes of this case is deeply connected to the Western District of Washington.

In sum, the Western District of Washington is the site of the bulk of common facts and important witnesses relevant to these actions.

Plaintiffs, counsel, class members, experts and witnesses are likely to be located across the country and a district with convenient, accessible transportation is a requirement. For example, Plaintiff Fadullon is a resident of California. As such, travel will be needed for some counsel and/or plaintiffs regardless of the transferee court's location.

The Western District of Washington is also located in a major city with a convenient international airport allowing easy access to every American metropolitan area, which would allow for easy transport for witnesses and parties attending hearings, depositions or other meetings As with *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2002), "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." *Id.* at 1355; *see*

*also In re Jamster Mktg. Litig*., 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (choosing a

transferee forum in an "accessible metropolitan location"").

        **2.**        **The Western District Is Well-Suited to Manage the Demands of This Action.**

        Determining whether the transferee court has the capacity to handle the litigation is a

factor this Panel has considered in the past. *In re Vioxx Prod. Liab. Litig*., 360 F. Supp. 2d 1352,

1354 (J.P.M.L. 2005) (assigning litigation to a jurist experienced in complex multidistrict

products litigation and sitting in a district with the capacity to handle the litigation). The Western

District of Washington has both the capacity and experience to handle this MDL litigation.

Because the District has no MDL cases currently pending, it "is not currently overtaxed with

other multidistrict dockets; and … possesses the necessary resources to be able to devote the

substantial time and effort to pretrial matters that this complex docket is likely to require." *In re*

*Phenylpropanolamine (PPA) Products Liability Litig*., 173 F. Supp. 2d. 1377, 1380 (J.P.M.L.

2001) (transferring fourteen pending actions to the Western District of Washington for

coordinated or consolidated pretrial proceedings). Likewise, having concluded several MDLs,

the District has a proven ability to manage MDLs in general in an efficient and expeditious

manner. *See, e.g., In re: Park-West Galleries, Inc. Mktg. & Sales Practices Litig*., 655 F. Supp.

2d 1378 (J.P.M.L. 2009) (transferred for coordination in Western District of Washington); *In re*

*Phenylpropanolamine*, 173 F. Supp. 2d. 1377 (same).

        More generally, the docket conditions of the Western District of Washington are notably

advantageous as well. *Table of U.S. District Court Combined Civil and Criminal Federal Court*

*Management Statistics, U.S. District Court – Judicial Caseload Profile*, *Western Washington*

(Mar. 31, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_dist

profile0331.2019.pdf (last visited July 30, 2019). In the 12 months ending March 31, 2019, the

median time from filing to disposition of civil matters within the District is just over seven

months, among the top twenty-five districts in the nation. Likewise, in that same time frame, the

District has terminated 3,697 cases and boasts a significantly low percentage of cases pending

for more than 3 years, at only 3.6%.

The Western District of Washington is a well-equipped court with the judicial resources

and experience needed for this case. Therefore, the Western District of Washington is well-suited

to receive this complex MDL.

### III. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Panel order these

related actions, and any others that may be subsequently filed, consolidated and transferred under

Section 1407 to the Western District of Washington.

Respectfully submitted,

Dated: July 30, 2019                    **KELLER ROHRBACK L.L.P.**

*/s/ Cari Campen Laufenberg*
Cari Campen Laufenberg
Lynn Lincoln Sarko
T. David Copley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: 206-623-1900
Fax: 206-623-3384
claufenberg@kellerrohrback.com
lsarko@kellerrohrback.com
dcopley@kellerrohrback.com

Christopher Springer
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: 805-456-1496
Fax: 805-456-1497
springer@kellerrohrback.com

Tina Wolfson
Theodore Maya

10

Bradley K. King
Ruhandy Glezakos
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: 310-474-9111
Fax: 310-474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com
rglezakos@ahdootwolfson.com

***Counsel for Plaintiff Michael Fadullon***