### BEFORE THE UNITED STATES JUDICIAL PANEL ON
### MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: CAPITAL ONE CONSUMER DATA | ) | MDL No. 2915 |
| SECURITY BREACH LITIGATION | ) | |

### CAPITAL ONE DEFENDANTS' RESPONSE TO
### MOTIONS FOR TRANSFER AND CONSOLIDATION UNDER 28 U.S.C. § 1407

David L. Balser
Georgia Bar No. 035835
S. Stewart Haskins II
Georgia Bar No. 336104
John C. Toro
Georgia Bar No. 175145
Kevin J. O'Brien
Georgia Bar No. 714849
Robert D. Griest
Georgia Bar No. 294216
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com

Mary C. Zinsner (VSB No. 31397)
**TROUTMAN SANDERS LLP**
401 9th Street, NW, Suite 1000
Washington, DC 20004
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mary.zinsner@troutman.com

Robert A. Angle (VSB No. 37691)
Jon S. Hubbard (VSB No. 71089)
Timothy J. St. George (VSB No. 77349)
Harrison Scott Kelly (VSB No. 80546)
**TROUTMAN SANDERS LLP**
1001 Haxall Point

Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
robert.angle@troutman.com
jon.hubbard@troutman.com
timothy.st.george@troutman.com
scott.kelly@troutman.com

*Counsel for Capital One Financial Corporation,*
*Capital One Bank (USA), N.A., and*
*Capital One, N.A.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.      The Related Actions Should Be Consolidated in the Eastern District of Virginia,
        Alexandria Division. ............................................................................................... 5

        A.      All the Related Actions Involve Common Questions of Fact ................................ 5

        B.      Consolidated Pretrial Proceedings Will Serve the Convenience of the
                Parties and Witnesses and Promote the Just and Efficient Conduct of the
                Litigation .................................................................................................................. 7

        C.      The Alexandria Division of the Eastern District of Virginia Is the Superior
                Transferee Forum .................................................................................................... 8

                1.      The Alexandria Division of the Eastern District of Virginia Is the
                        Most Convenient Forum. ................................................................................ 9

                2.      The Highest Number of Cases Have Been Filed in the Eastern
                        District of Virginia. ...................................................................................... 12

                3.      The Alexandria Division of the Eastern District of Virginia Is
                        Well-Suited to Handle the Litigation. .......................................................... 13

II.     Plaintiffs' Arguments for Transferring the Actions to Other Districts Should Be
        Rejected .................................................................................................................. 16

        A.      The Western District of Washington Is Not An Appropriate Transferee
                Forum. ..................................................................................................................... 16

        B.      The District of the District of Columbia Is Not An Appropriate Transferee
                Forum. ..................................................................................................................... 18

        C.      The Northern District of California Is Not An Appropriate Transferee
                Forum. ..................................................................................................................... 19

CONCLUSION ................................................................................................................. 20

Defendants Capital One Financial Corporation, Capital One Bank (USA), N.A., and Capital One, N.A. (collectively, "Capital One") respectfully submit this response to the motions for consolidation and transfer under 28 U.S.C. § 1407 filed by plaintiffs in class action lawsuits relating to the cyber incident that Capital One announced on July 29, 2019.  For the convenience of the parties and witnesses and to promote the just and efficient conduct of the litigation, all related actions should be consolidated and transferred to the Alexandria Division of the Eastern District of Virginia.

## INTRODUCTION

To date, more than fifty putative class actions have been filed in federal courts nationwide relating to the 2019 criminal cyber-attack on Capital One's systems in which personal identifying information ("PII") of Capital One cardholders, customers, and credit card applicants was illegally accessed by a lone hacker (the "Cyber Incident").

Within days of Capital One's announcement of the Cyber Incident, dozens of putative class action complaints were filed in various district courts.  These related actions all arise out of a principal allegation—that Capital One failed to sufficiently protect the PII accessed in the Cyber Incident.  Based on that central and overarching allegation, the complaints in the related actions purport to assert—on behalf of overlapping nationwide classes and subclasses—a host of the same or substantially similar common law and statutory claims against Capital One.  In short, all of the related actions seek the same relief, from the same defendants, on behalf of the same consumers, to redress the same alleged harms.

Just two days after Capital One announced the Cyber Incident, a plaintiff in one of the related actions filed a motion with this Panel seeking transfer and consolidation in a single district court under 28 U.S.C. §1407.  Given the substantial volume of related actions already

1

filed, the large number of alleged class members, and the likelihood that both putative class action and individual complaints will continue to be filed, no one can reasonably dispute that the federal litigation arising out of the Cyber Incident should be consolidated in a single court for efficient and orderly pretrial proceedings.  Indeed, this Panel has consistently ordered transfer and consolidation in litigation arising out of cyber incidents.  *See*, *e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, MDL No. 2879, Dkt. No. 191 (February 6, 2019); *In re Equifax Consumer Data Sec. Breach Litig.*, MDL No. 2800, Dkt. No. 550 (December 6, 2017); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, MDL No. 2752, Dkt. No. 62 (December 7, 2016).  The Panel should follow its well-reasoned precedent here and establish an MDL proceeding for all cases arising out of the Cyber Incident.  Doing so would facilitate "the convenience of [the] parties and witnesses and . . . promote the just and efficient conduct of [the] actions" as a whole.  28 U.S.C. § 1407(a).

While conducting coordinated pretrial proceedings in a single court is indisputably appropriate here, there are competing views about *where* those proceedings should occur.  In the first Section 1407 motion filed, plaintiff in *Fadullon v. Capital One Financial Corporation*, *et al.*, No. 2:19-cv- 01189 (W.D. Wash.), asks this Panel to transfer all related cases to the Western District of Washington.  *See* Dkt. No. 1.  The second motion, filed by plaintiffs in *Zosiac v. Capital One Financial Corporation*, *et al.*, No. 1:19-cv-02265 (D.D.C.), seeks transfer to the District for D.C.  *See* Dkt. No. 8.  Various plaintiffs have weighed in to support the *Fadullon* or *Zosiac* motions, while others have proposed alternative transferee forums, including the Eastern District of Virginia and the Northern District of California.

All three of the Capital One entities named as defendants in the related actions are headquartered in McLean, Virginia, located in the Eastern District of Virginia, where most of the

relevant witnesses, documents, and computer systems relating to the claims against Capital One are located. Indeed, the overwhelming majority of Capital One's leadership and associates are located in the Eastern District of Virginia, including those devoted to the company's cybersecurity program. The Eastern District of Virginia is, moreover, renowned for its ability to swiftly and efficiently resolve complex litigation, and it is well-suited for handling consolidated pretrial proceedings in the related actions. Finally, the courts within the Eastern District of Virginia—particularly its Alexandria Division—are conveniently located, providing ready access to multiple large airports and an array of hotels and other amenities. In contrast, the Western District of Washington, the District for D.C., and the Northern District of California have no meaningful connection to this litigation, and none of them is an appropriate transferee forum.

Accordingly, Capital One supports transfer and consolidation of all related actions in the Eastern District of Virginia, Alexandria Division.

## FACTUAL BACKGROUND

Established in 1994, Capital One Financial Corporation is a diversified financial services holding company with banking and non-banking subsidiaries. The company's principal subsidiaries, which have also been named as defendants in the related actions, are (i) Capital One Bank (USA), N.A. ("COBNA"), which offers credit and debit card products, other lending products, and deposit products; and (ii) Capital One, N.A. ("CONA"), which offers a broad spectrum of banking products and financial services to consumers, small businesses, and commercial clients. Like Capital One Financial Corporation, both COBNA and CONA have their corporate headquarters in McLean, Virginia, and out of approximately 44,000 U.S. employees, 22,000 of them are in Virginia—more than in any other state. *See* Declaration of Chris Harcum, attached as Exhibit A, ¶ 5. These Virginia employees are split between locations

in the Eastern District of Virginia—in and around McLean, at locations in the Richmond metropolitan area, and in Chesapeake, Virginia. *Id*. But it is not simply a matter of sheer number of employees—nearly 80% (548 of 696) of the members of Capital One's Cyber Security Team (the "Cyber Team") sit in the Eastern District of Virginia (396 associates in McLean, 152 in the Richmond area) along with nearly 90% of the Cyber Team's senior leaders (31 in McLean and three in Richmond, out of 38 total). *Id*., ¶¶ 7-9.

Capital One confirmed that the Cyber Incident had occurred on July 19, 2019, promptly remediated the misconfiguration that permitted the hacker's intrusion, and began working with federal law enforcement to facilitate the hacker's apprehension. The person accused of carrying out the Cyber Incident, Paige Thompson, was arrested and is now the subject of a criminal proceeding in federal court. Capital One announced the Cyber Incident on July 29, 2019.

The next day, plaintiffs began filing putative class actions against Capital One and, in a small minority of cases, other defendants including Amazon Web Services ("AWS").[1] All of the actions arise out of the same principal allegation—that Capital One failed to sufficiently protect the PII accessed in the Cyber Incident. Based on that core allegation, plaintiffs assert a variety of claims against Capital One, including: (i) negligence; (ii) negligence *per se*; (iii) breach of contract and/or implied contract; (iv) unjust enrichment; (v) invasion of privacy; (vi) violations of state data breach laws; and (vii) violations of state consumer-protection laws. The plaintiffs assert these claims on behalf of the same or overlapping putative classes, including nationwide and state classes of individuals whose PII was allegedly accessed in the Cyber Incident.

In light of Capital One's headquarters within the Eastern District of Virginia, it is not surprising that a significant number of cases have been filed there. Sixteen of the related actions

---

[1] AWS, a subsidiary of Amazon.com, Inc., provided Capital One with cloud storage on which the information at issue was located.

were filed in the Eastern District of Virginia—almost twice as many as any other District—with 11 of those actions originally filed in the Alexandria Division and five in the Richmond Division.

## ARGUMENT

I.     **The Related Actions Should Be Consolidated in the Eastern District of Virginia, Alexandria Division.**

Under 28 U.S.C. § 1407(a), consolidation of related actions for pretrial proceedings is warranted where: (i) the cases involve one or more common questions of fact; and (ii) transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the cases. *In re Anthem, Inc., Customer Data Security Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015). These factors are unquestionably satisfied here. More than fifty putative class actions have been filed relating to the *same* underlying event—the Capital One Cyber Incident—and asserting the same or substantially similar claims on behalf of overlapping putative classes. Consolidating all the related actions in the Alexandria Division of the Eastern District of Virginia will maximize the efficiencies intended by Section 1407 and promote the convenience of the parties and witnesses and the just and efficient conduct of the litigation.

### A. All the Related Actions Involve Common Questions of Fact.

Related cases are appropriate for transfer and consolidation under Section 1407 where, as here, they "share factual issues arising from common allegations." *In re Lipitor (Atorvastatin Calcium) Mktg., Salespractices & Prods. Liab. Litig. (No. II)*, 997 F. Supp. 2d 1354, 1356–57 (J.P.M.L. 2014).

The complaints filed in the related actions plainly meet Section 1407's "common question of fact" standard because they all arise out of the same principal allegation—that Capital One failed to sufficiently protect the PII accessed in the Cyber Incident. *See, e.g.,* Compl. ¶ 29, *McDonough*, No. 3:19-cv-00595 (E.D. Va.) ("[Capital One] failed to implement

and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach."); Compl. ¶ 1, *Baird*, No. 3:19-cv-00585 (E.D. Va.) ("Plaintiff asserts this class action against Capital One for its failure to exercise reasonable care in securing and safeguarding consumers' sensitive personal information . . . ."); Compl. ¶ 2, *Ouellette, et al. v. Capital One Financial Corporation, et al.*, No. 2:19-cv-01203 (W.D. Wash.) ("Plaintiffs bring this class action lawsuit on their behalf, and on behalf of the Classes, against Capital One and the Amazon Defendants for their failure to protect the confidential information of over 100 million consumers . . . .").

All the related actions will necessarily involve questions about the Cyber Incident (including Capital One's discovery of and response to it), Capital One's data security practices, and plaintiffs' alleged damages. *See In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) (ordering consolidation where "[c]ommon factual questions [we]re presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."). These overarching questions of fact are at the core of all the complaints, warranting transfer and consolidation under Section 1407. And, importantly, virtually all the Plaintiffs who have weighed in have also supported consolidation.

While some of the complaints contain unique factual allegations or distinct causes of action, those minor differences do not militate against consolidation. *See In re Marriott Int'l, Inc., Customer Security Breach Litig.*, 363 F. Supp. 3d at 1374 (explaining that "differing legal theories is not significant where . . . the actions still arise from a common factual core."); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) ("[T]ransfer under Section 1407 does not require a complete identity or even a majority of

6

common factual issues . . . .").  Therefore, that some of the related actions may allege facts or assert claims that are ancillary to the core allegation that Capital One failed to adequately safeguard consumer PII does not weigh against consolidation.

**B.  Consolidated Pretrial Proceedings Will Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Litigation.**

This Panel routinely orders transfer and consolidation where a large number of putative class actions are filed in the wake of a data security incident impacting the PII of many consumers.  *See, e.g., In re Uber Techs., Inc., Data Sec. Breach Litig.,* 304 F. Supp. 3d 1351 (initially consolidating 10 cases); *In re Marriott Int'l, Inc., Customer Sec. Breach Litig.,* 363 F. Supp. 3d 1372 (initially consolidating 11 cases); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2017) (initially consolidating 97 cases).

Currently pending before this Panel are motions for transfer and consolidation of 21 actions arising out of the Cyber Incident.  *See* Dkt. No. 11.  Numerous other cases have been noticed as potential tag-along actions, and additional potential tag-along actions will continue to be noticed to the Panel.  Consistent with this Panel's precedent in prior data security breach matters, consolidation is warranted under Section 1407.  Absent consolidation, each of the over fifty cases filed to date would have to be litigated, simultaneously, in dozens of federal courts across the country before different judges.  Accordingly, this litigation falls squarely within the scope of what Section 1407 is intended to address, because consolidated pretrial proceedings "will eliminate duplicative discovery, prevent inconsistent pretrial rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary."  *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372 at 1374.

Further, because the related actions share common questions of fact and assert the same or similar claims, the actions will involve the same discovery and inquiry into the same relevant

subject matters.  *See In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (finding that consolidation "has the benefit of placing all actions . . . before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs"). Consolidated pretrial proceedings will allow the efficient conduct of discovery under the oversight of a single court, rather than having entirely duplicative discovery occur on a piecemeal basis in different courts around the country.

Likewise, enabling a single transferee judge to resolve all pretrial issues, including Rule 12(b) motions, discovery disputes, and potentially class certification issues, will avoid the risk of inconsistent pretrial rulings being issued by different judges.  *See In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017) (consolidating where "there [wa]s a significant risk of inconsistent rulings" if the actions proceeded individually).

Given the number of actions pending in federal courts nationwide, all related to the Cyber Incident and all based on the same core factual allegations, consolidation in a single court for pretrial proceedings is the only viable path for the just and efficient resolution of the litigation.

### C. The Alexandria Division of the Eastern District of Virginia Is the Superior Transferee Forum.

The Alexandria Division of the Eastern District of Virginia is the superior transferee forum.  The majority of Capital One's relevant witnesses and documents are located in that Division, making it the most convenient forum for the parties and witnesses.  The Eastern District of Virginia also has by far the most pending actions relating to the Cyber Incident (11 were filed in the Alexandria Division and five in the Richmond Division).  Moreover, the Eastern District of Virginia is well-equipped to efficiently handle this litigation.

      1.  *The Alexandria Division of the Eastern District of Virginia Is the Most Convenient Forum.*

Capital One's headquarters are located in McLean, Virginia.  This Panel routinely establishes MDL proceedings where the defendant is headquartered.  *See, e.g., In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) (consolidating cases in Alexandria Division of the Eastern District of Virginia because "Lumber Liquidators is based in th[e D]istrict . . . and relevant documents and witnesses will likely be found there"); *In re Xyberbaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (same).

This preference for consolidation where a defendant is headquartered has been particularly true in recent data security breach cases like this one.  *See, e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d at 1375 (selecting district where defendant is headquartered because relevant documents and witnesses are likely to be found there); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d at 1326 (same); *In re Supervalu, Inc., Customer Data Sec. Breach Litig.*, 67 F. Supp. 3d 1377, 1378 (J.P.M.L 2014) (same); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d at 1354–55 ("[T]he Northern District of California is an appropriate transferee district for this litigation [because] Defendant Yahoo's corporate headquarters is located within the district."); *In re Med. Informatics Eng'g, Inc., Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) ("The center of gravity of this litigation is located in the Northern District of Indiana, where [defendant] is headquartered and operates . . . ."); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d at 1400 (ordering consolidation in the Northern District of Georgia where "Home Depot is headquartered").

Here, Capital One is based in and strongly tied to the Eastern District of Virginia, particularly the Alexandria Division. It has approximately 22,000 employees in Virginia—more than in any other state—split between Capital One's headquarters in McLean, locations in the Richmond area, and a smaller facility in Chesapeake, Virginia. Ex. A, ¶ 5. And, out of the 696 employees on Capital One's Cyber Team, 548 are located within the Eastern District of Virginia (396 are in McLean and 152 work in the Richmond area). *Id.* ¶¶ 6-8. Senior leadership for Capital One's Cyber Team is also concentrated in the Eastern District of Virginia. Thirty-one of 38 members of Capital One's Cyber Leadership Team—tasked with defending the company against cybersecurity threats—are located in McLean, with three more located in Richmond. *Id.*

The Alexandria Division of the Eastern District of Virginia is the nerve center of Capital One's operations, as well as its cybersecurity operations, with the most significant concentration of relevant personnel located there. The individuals located at Capital One's headquarters in McLean represent the majority of the witnesses likely to have knowledge relevant to the Cyber Incident, and the majority of documents relating to Capital One's cybersecurity efforts generally and the Cyber Incident in particular will be located in McLean. Additionally, a majority of the databases, or "buckets," accessed in the Cyber Incident were stored on AWS servers in the Eastern District of Virginia. *See* Declaration of Michael Fisk, attached as Exhibit B, ¶ 4.[2]

Capital One is not alone in recognizing that the Alexandria Division of the Eastern District of Virginia is the appropriate forum for consolidated pretrial proceedings. For example, Plaintiff McDonough correctly notes that the Alexandria Division is Capital One's "nerve center

---

[2] In addition to relevant AWS servers being located in the Eastern District of Virginia, the internal security team that led AWS's investigation of the Cyber Incident is located at AWS's East Coast headquarters in Herndon, Virginia, which is also in the Alexandria Division of the Eastern District of Virginia and located approximately 30 miles from the federal courthouse in Alexandria. *See* Declaration of Brian Buckley in Support of Amazon's Forthcoming Joinder in the Capital One Defendants' Response, ¶ 2.

and the center of their decision-making process," making the Alexandria Division "the logical transferee forum."  Dkt. No. 5 at 8.  Plaintiff Baird echoes McDonough's support for the Alexandria Division as "the most-logical 'center of gravity' for all of the [related] actions."  Dkt. No. 7 at 6.  And Plaintiff Perdew properly discounts the significance of AWS and Ms. Thompson to the litigation, observing that "Capital One is the primary target and undoubtedly many current and former employees will be located in Virginia."  Dkt. No. 89 at 5.

Accordingly, because most of the witnesses, servers, and information that could be relevant to the litigation are located in the Alexandria Division of the Eastern District of Virginia, that court is the most appropriate transferee forum.  *See In re Xyberbaut Corp. Sec. Litig.*, 403 F. Supp. 2d at 1355 (consolidating actions in the Eastern District of Virginia because it was a "likely source of relevant documents and witnesses inasmuch as [the defendant's] headquarters are located there."); *In re Schnuck Mkts., Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (ordering consolidation in district where defendant was headquartered and where impacted servers were located); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 867 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) (same).

Transfer to the Eastern District of Virginia's Alexandria Division would also be convenient for the parties.  Alexandria is conveniently located with access to three large airports: Ronald Reagan Washington National Airport, Washington Dulles International Airport, and Baltimore/Washington International Thurgood Marshall Airport, with direct flights to all major U.S. cities.  The Alexandria area also has an abundance of hotels and other amenities.  Thus, the Alexandria Division of the Eastern District of Virginia would be a convenient location for the consolidated litigation.  *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 26 F. Supp. 3d 1396,

1397 (J.P.M.L. 2014) (recognizing the Alexandria Division's convenient location and accessibility, even for international witnesses and parties).

2. *The Highest Number of Cases Have Been Filed in the Eastern District of Virginia.*

Substantially more cases have been filed in the Eastern District of Virginia than any other District.  Indeed, out of the over fifty cases filed to date, 16 were filed in the Eastern District of Virginia.[3]  The District with the next highest number of cases, the District of the District of Columbia, has just nine pending cases, seven of which were filed by *the same law firm*—which should be counted as a single proceeding.  The only other District with more than three pending cases is the Western District of Washington, which has just six cases.

While not dispositive, this Panel has often found the District where the highest number of related actions were filed to be the appropriate transferee court for consolidation.  *See, e.g., In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008) (selecting district where largest number of cases had been filed); *In re Marine Hose Antitrust Litig. (No. II),* 531 F. Supp. 2d 1381, 1382 (J.P.M.L 2008) (same); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (same).  Therefore, in conjunction with the other compelling reasons for consolidation in the Alexandria Division of the Eastern District of Virginia, the fact that substantially more cases have been filed there than in any other court weighs in favor of selecting it as the appropriate MDL forum.

---

[3] Of the 16 cases filed in the Eastern District of Virginia, 11 were filed in the Alexandria Division and 5 were filed in the Richmond Division.  Six of the Alexandria cases were subsequently transferred to the Richmond Division, in response to motions filed by plaintiffs' counsel seeking consolidation of all cases in the District with a case they filed in Richmond.

### 3. The Alexandria Division of the Eastern District of Virginia Is Well-Suited to Handle the Litigation.

The Alexandria Division of the Eastern District of Virginia is uniquely suited to handle the consolidated pretrial proceedings in a timely and efficient manner.  When determining the appropriate court for consolidation, this Panel takes into consideration both the docket conditions and the expertise of the proposed forums.  *See, e.g., In re Xyberbaut Corp. Sec. Litig.*, 403 F. Supp. 2d at 1355 (transferring related actions to the Eastern District of Virginia and citing its "relatively favorable caseload statistics"); *In re TLI Commc'ns LLC Patent Litig.*, 26 F. Supp. 3d at 1397 (ordering consolidation in Alexandria Division of the Eastern District of Virginia and noting the Court's experience); *see also Manual Complex Litigation* § 20.131 (4th ed.) (explaining that Panel considers "the experience, skill, and caseloads of available judges").

This Panel has often ordered consolidation in transferee courts that are capable of expeditiously resolving complex litigation.  *See, e.g., In re Fenofibrate Patent Litig.*, 787 F. Supp. 2d 1352, 1354 (J.P.M.L. 2011) (finding that Section 1407 consolidation is intended to allow for pretrial proceedings to be "conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of all parties and the courts"); *In re Morgan Stanley & Co., Inc., Overtime Pay Litig. (No. II)*, 471 F. Supp. 2d 1353, 1354 (J.P.M.L. 2006) (selecting transferee forum based on its ability to "further enhance the prospects for a just and speedy resolution of all [related] actions").  Often referred to as the "Rocket Docket," the Eastern District is well-known for its ability to resolve complex litigation expeditiously.  Indeed, for several decades, the Eastern District of Virginia has been faster on average than any other federal district court in the country.  For the 12-month period ending March 31, 2019, the median time from the filing to the disposition of civil cases resolved during or after pretrial proceedings was just 7.5 months in the Eastern District of Virginia, compared to a national average of 13.4

13

months.  *See Median Time From Filing to Disposition of Civil Cases, by Action Taken*, Table C-5, Federal Judicial Caseload Statistics, March 31, 2019, *available at* https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2019/03/31.

Capital One, as well as certain plaintiffs including those in *McDonough* and *Baird,* support consolidation in the District based in part on the benefits to be gained by expedited proceedings. *See McDonough* Response, Dkt. No. 7 at 6 ("No other court in the country is better equipped and positioned to efficiently manage the pretrial activities in these cases . . . ."); *see also Baird* Response, Dkt. No. 5 at 12.  And to the extent any plaintiffs oppose consolidation in the Eastern District of Virginia because of the speed at which litigation proceeds there, this Panel recently rejected that argument, which is itself contrary to the Panel's preference for efficient resolution. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 109 F. Supp. 3d at 1383 (stating that plaintiffs opposing consolidation in the "Rocket Docket" had "failed to articulate precisely how proceeding at an expeditious pace would prejudice the parties").

In addition to the Eastern District of Virginia's superior ability to resolve cases quickly, its docket is also less congested than other federal courts as a whole.  As of March 31, 2019, 2,248 civil cases were pending in the Eastern District of Virginia, compared to a national average across all 94 federal courts of approximately 3,867.  *See Civil Cases Filed, Terminated, and Pending, by Jurisdiction*, Table C-3, Federal Judicial Caseload Statistics, March 31, 2019, *available at* https://www.uscourts.gov/file/26388/download.  Indeed, this Panel has previously selected the Eastern District of Virginia as an MDL forum in light of its "relatively favorable caseload statistics."  *See In re Xyberbaut Corp. Sec. Litig.*, 403 F. Supp. 2d at 1355.

14

Finally, the Alexandria Division of the Eastern District of Virginia has been efficiently handling to completion complex MDL proceedings over the past several years, evidencing the court's capability to take on the large number of related cases at issue here.  *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Marketing, Sales Practices & Prods. Liability Litig.,* No. 1:15-md-2627 (E.D. Va) and *In re Lumber Liquidators Chinese-Manufactured Flooring Durability Marketing and Sales Practices Litigation*, No. 16-md-2743 (E.D. Va.).  A few years earlier, Judge Ellis of the Eastern District of Virginia oversaw the consolidated MDL proceedings in *In re TLI Communications LLC Patent Litigation*, No. 14-md-2534 (E.D. Va.).  And with the *Lumber Liquidators* MDLs now winding down, and just one other MDL proceeding pending (*In re Zetia (Ezetimibe) Antitrust Litigation*, No. 18-md-2836 (E.D. Va.)), the Eastern District of Virginia is particularly well-suited to oversee consolidated pretrial proceedings in this litigation.

For these reasons, the Eastern District of Virginia's Alexandria Division is the objectively superior forum for consolidation.  Although certain plaintiffs have advocated for the Richmond Division of the Eastern District of Virginia, including a group of plaintiffs in five cases filed in the Eastern District of Virginia (the "*Heath* Plaintiffs," Dkt. No. 106), their arguments in favor of Richmond overlook that the majority of the relevant witnesses and documents are located in the Alexandria Division, and that Alexandria is more accessible (and thus convenient) than Richmond.[4]  *See* Exs. A and B.  Therefore, the Alexandria Division is the

---

[4] The *Heath* Plaintiffs misrely on the LinkedIn profile of Capital One's Chief Security Officer, ignoring that he is responsible for workplace security, not cybersecurity, for the company. Capital One's Chief *Information* Security Officer and 31 of 38 members of his Cyber Leadership Team are located in Capital One's McLean headquarters, along with more than half of all cybersecurity professionals Capital One employs.  As such, the vast majority of key witnesses responsible for the security of Capital One's data and with knowledge of the Cyber Incident are located within the Alexandria Division of the Eastern District of Virginia.

logical choice for transfer.  If, however, no judges in the Alexandria Division are available, then the Richmond Division would be the next logical location.

## II.     Plaintiffs' Arguments for Transferring the Actions to Other Districts Should Be Rejected.

While the plaintiffs in *Fadullon* and *Zosiac* are correct that the related actions should be consolidated under Section 1407, their arguments for transfer to districts other than the Eastern District of Virginia are misguided and unpersuasive.  The forums they propose—the Western District of Washington and the U.S. District Court for the District of Columbia—have no relevant connection to Capital One or the Cyber Incident.  They are also undesirable forums for other reasons relevant to the Panel's consideration.

### A. The Western District of Washington Is Not An Appropriate Transferee Forum.

The *Fadullon* Plaintiffs filed the first Section 1407 motion, seeking transfer to the Western District of Washington.  *See* Dkt. No. 1.  They contend that District is the "ideal transferee forum" primarily because (i) the individual accused of carrying out the Cyber Incident, Paige Thompson, perpetrated her attack from Seattle and is currently in federal custody there; and (ii) AWS, which is named as a defendant in *Fadullon* (and several other cases), "has substantial ties to the Western District of Washington."  *Id*. at 6-7.  Plaintiff Hun seconds these arguments.  *See* Dkt. No. 93.  But neither argument is persuasive.

First, the *Fadullon* Plaintiffs are incorrect that Ms. Thompson will be the "key witness" and that facts disclosed in her criminal proceeding "will determine the liability of all the defendants in the civil actions."  Dkt. No. 1 at 1-2.  While Ms. Thompson certainly possesses relevant information pertaining to the Cyber Incident, the core factual allegation underpinning the complaints in the related actions is that *Capital One* failed to adequately safeguard consumers' PII.  Accordingly, the critical discovery to be taken by plaintiffs in the MDL

proceedings will concern Capital One's data security practices and its alleged conduct with respect to the Cyber Incident.  Documents and witnesses relevant to those issues are located primarily in Virginia, *not* Seattle.[5]

Second, the fact that the *Fadullon* Plaintiffs (and several others) have named AWS as a defendant does not necessarily mean that AWS is a significant party in the litigation.  In fact, only 10 of the over fifty cases filed to date even include AWS or Amazon as a defendant.  And while the criminal hacker accessed certain information stored on AWS cloud servers, Capital One witnesses, not AWS witnesses, have knowledge of and will testify to the configuration and security of the databases at issue.  *See* Ex. B, ¶ 5.  And, importantly, the majority of the impacted "buckets" of information were located on AWS servers in the Eastern District of Virginia, and the internal AWS security team that investigated the Cyber Incident is based in the Eastern District of Virginia.

Since it is located nearly 3,000 miles from Capital One's headquarters and most of the relevant witnesses and documents, the Western District of Washington is an extraordinarily *inconvenient* forum for consolidated proceedings.  Accordingly, transferring the related actions to the Western District of Washington would be entirely out of step with this Panel's well-established precedent, and it would fail to promote the goals of convenience and efficiency contemplated by Section 1407.

---

[5] Additionally, as Plaintiff McDonough correctly notes in her brief supporting consolidation in the Eastern District of Virginia, Ms. Thompson could invoke her Fifth Amendment rights and refuse to provide any information relating to the Cyber Incident.  *See* Dkt. No. 5 at 6.  And even if a deposition of Ms. Thompson were to proceed, it would likely occur at a Federal Bureau of Prisons facility, the location of which is purely speculative at this point.

### B.  The District of the District of Columbia Is Not An Appropriate Transferee Forum.

The *Zosiac* Plaintiff's request for consolidation in the District of the District of Columbia is equally misguided.  In advocating for that District, the *Zosiac* Plaintiffs primarily argue that (i) the D.C. courthouse is closer to McLean, Virginia than any other federal courthouse; (ii) most related actions are pending in D.C.; and (iii) the District of the District of Columbia is well-equipped to handle the litigation.  The last argument can be easily disposed of, because while the judges in D.C. are certainly capable of handling the MDL, no one—including the *Zosiac* Plaintiffs—could credibly argue that the judges in the Eastern District of Virginia are *not* equally well-equipped.  Further, after taking into account subsequent filings, the Plaintiffs' statement that "[m]ore Related Actions are pending in the District of the District of Columbia than in any other court" is incorrect.  Dkt. No. 4 at 2.  Only nine cases have been filed in D.C.—seven by the *same law firm*[6]—compared to 16 cases in the Eastern District of Virginia.  Thus, properly construed, there are comparatively few cases pending in the District of D.C., especially when compared to the Eastern District of Virginia.

The *Zosiac* Plaintiffs' hyper-technical argument—repeated by others including Plaintiff Aminov[7]—about the D.C. courthouse being slightly closer to McLean than Alexandria should also receive no weight.  Capital One's headquarters are essentially equidistant from the federal courthouses in Alexandria (17.88 miles by car) and D.C. (17.67 miles by car).  Moreover,

---

[6] The *Zosiac* Plaintiffs argue that—at the time of filing their motion—the largest number of cases (then five) had been filed in D.C.  But the same firm that represents the Zosiac Plaintiffs filed *all five of those cases* on behalf of *identical putative classes of plaintiffs*.  The priority sometimes afforded by the Panel to the volume of pending cases would be inapplicable under these circumstances.

[7] While Plaintiff Aminov supports consolidation in D.C., Plaintiff concedes that the Eastern District of Virginia—specifically its Alexandria Division—would be "convenient for the parties [and] witnesses."  Dkt. No. 92 at 3 n.3.

Capital One's headquarters are located in the Eastern District of Virginia, *not* the District of D.C., and the *Zosiac* Plaintiffs fail to identify any legitimate connection between D.C., on the one hand, and Capital One and the Cyber Incident, on the other.

Finally, the District of D.C. has considerably less favorable docket conditions compared to the Eastern District of Virginia. The most recent data from the Administrative Office of the U.S. Courts on the median lifespan of civil cases resolved during or after pretrial proceedings in the District of D.C. indicates a median time of ***35.4 months***—nearly *three times* the national median of 12.6 months—compared to just ***7.7 months*** in the Eastern District of Virginia.[8] *See Median Time From Filing to Disposition of Civil Cases, by Action Taken*, Table C-5, Federal Judicial Caseload Statistics, March 31, 2018,[9] *available at* https://www.uscourts.gov/file/24420/download. Moreover, the District of D.C. already has seven pending MDLs, versus just three in the Eastern District of Virginia—and the two *Lumber Liquidators* MDLs before Judge Trenga in the Alexandria Division are in their final stages.

### C. The Northern District of California Is Not An Appropriate Transferee Forum.

Finally, the Northern District of California, supported by plaintiffs in *Aballo* (Dkt. No. 95), has virtually no connection to this litigation and cannot seriously be considered as a potential transferee forum. The *Aballo* Plaintiffs incorrectly suggest that "the Northern District

---

[8] Plaintiff Aminov cites an "average time of 5.8 months" in D.C. (Dkt. No. 92 at 11), but that figure includes *all* civil cases regardless of the manner of disposition, including cases dismissed in their infancy—e.g., cases dismissed at the pleading stage and those voluntarily dismissed without court action. Given that the purpose of Section 1407 consolidation is the facilitation of consolidated *pretrial proceedings*, the salient data points are those evidencing the courts' efficiency in sheparding cases through pretrial proceedings—a benchmark by which the Eastern District of Virginia is over four times faster than the District of D.C.

[9] Although new versions of this table are published quarterly, the March 31, 2018 table is the most recent table to provide a median time interval for the District of D.C. with respect to cases disposed of during or after pretrial proceedings.

of California will be the site of substantial discovery" because GitHub, Inc. ("GitHub"), a Microsoft subsidiary, is based in San Francisco.  Specifically, the Plaintiffs argue that substantial discovery will be taken of GitHub because the accused hacker allegedly posted about stolen Capital One data on a GitHub webpage she controlled.  But out of the over fifty cases filed in the wake of the Cyber Incident, the *Aballo* Plaintiffs **are the only plaintiffs to name GitHub as a defendant**.  And to the extent any GitHub documents or witnesses are relevant to the claims against Capital One in the related cases, such discovery will be miniscule compared to the discovery relating to Capital One, which will be focused in the Eastern District of Virginia.  Thus, the Northern District of California—like the Western District of Washington—would be an exceedingly *inconvenient* forum for pretrial proceedings in litigation that, as a whole, is principally focused on Virginia-based Capital One.

*          *          *

No other forum comes close to matching the Alexandria Division of the Eastern District of Virginia's strong connections to this litigation.  Consolidating the related actions in that court will indisputably serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation in furtherance of Section 1407's goals.

## CONCLUSION

For these reasons, all the related actions should be consolidated for pretrial proceedings in the Eastern District of Virginia, Alexandria Division.

Respectfully submitted this 26th day of August, 2019.

*/s/ David L. Balser*
KING & SPALDING LLP
David L. Balser
Georgia Bar No. 035835
S. Stewart Haskins II
Georgia Bar No. 336104
John C. Toro
Georgia Bar No. 175145
Kevin J. O'Brien
Georgia Bar No. 714849
Robert D. Griest
Georgia Bar No. 294216
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
jtoro@kslaw.com
rgriest@kslaw.com

Mary C. Zinsner (VSB No. 31397)
TROUTMAN SANDERS LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mary.zinsner@troutman.com

Robert A. Angle (VSB No. 37691)
Jon S. Hubbard (VSB No. 71089)
Timothy J. St. George (VSB No. 77349)
Harrison Scott Kelly (VSB No. 80546)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
robert.angle@troutman.com
jon.hubbard@troutman.com
timothy.st.george@troutman.com
scott.kelly@troutman.com

*Counsel for Capital One Financial Corporation,*
*Capital One Bank (USA), N.A., and*
*Capital One, N.A.*

21